IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DONNA GOFORTH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-cv-274-TLW |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Donna Goforth seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. # 28). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**INTRODUCTION**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a

---

[1] Effective February 14, 2013, pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 44-year old female, applied for Titles II and XVI benefits on May 21, 2010. (R. 158-61, 162-65). Plaintiff alleged a disability onset date of May 9, 2010. (R. 158-61). Plaintiff claimed that she was unable to work due to bipolar disorder and PTSD. (R. 196). Plaintiff's claim for benefits was denied initially on September 2, 2010, and on reconsideration on April 13, 2011. (R. 87-90). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held the hearing on March 26, 2012. (R. 39-86, 112-13). The ALJ issued a decision on May 8, 2012, denying benefits and finding plaintiff not disabled because she was able to perform other work. (R. 14-38). The Appeals Council denied review, and plaintiff appealed. (R. 1-4, dkt. # 2).

## ANALYSIS

Plaintiff raises two issues on appeal. First, plaintiff argues that the ALJ erred in evaluating all of the medical opinion evidence, including the opinions of Dr. Lively, Dr. Morgan, and the agency physicians. Second, plaintiff cites four areas in which she claims the ALJ's findings are not supported by substantial evidence.

**Dr. Lively's Opinion**

Plaintiff argues that the ALJ did not conduct a proper treating physician analysis with respect to Dr. Lively's June 2010 questionnaire, which stated that plaintiff would not be able to work due to moods swings and emotional overreactions. (Dkt. # 20).

Plaintiff's argument fails because the ALJ did not consider Dr. Lively to be a treating physician. The ALJ noted that Dr. Lively "performed intake" of plaintiff in November 2009 and used that single report to diagnose plaintiff with dissociative disorder, PTSD, bipolar II disorder, and mood swings seven months later. (R. 26). In his analysis of the opinion evidence, the ALJ found that Dr. Lively's June 2010 opinion was not entitled to "controlling weight or special significance" but was included in his consideration of the evidence as a whole. (R. 30). First, the ALJ found that Dr. Lively's opinion was an opinion on whether plaintiff could work, an issue reserved to the Commissioner. Id. The ALJ also found that Dr. Lively's opinion was inconsistent with the findings of the consultative examining psychologist and the agency psychologists. Id. The ALJ also cited the lack of any treatment notes from Dr. Lively. Id. For those reasons, the ALJ gave Dr. Lively's opinion little weight. Id.

A treating physician is defined as one "who provides you, or has provided you with medical treatment or evaluation and who has, or has had an ongoing treatment relationship with you." 20 C.F.R. §§ 404.1502, 416.902. The Tenth Circuit has also determined that a treating physician must have a relationship "of both duration and frequency." Sissom v. Colvin, 512 Fed. Appx. 762, 765 (10th Cir. 2013) (unpublished)[2] (citing Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003)). While an ALJ must conduct the treating physician analysis when he gives less than controlling weight to a treating physician's opinion, the ALJ's duty to examine other

---

[2] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

medical opinions is less stringent. See generally Doyal, 331 F.3d at 762-64. For opinions that do not qualify as treating physician opinions, the ALJ need only consider the opinion evidence and give "specific, legitimate reasons for rejecting it," using the same factors used to evaluate a treating physician's opinion. Id. at 764 (citations omitted).

The factors for evaluating a treating physician's opinion include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which the opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. See 20 C.F.R. §§ 404.1527, 416.927. See also Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003) (quotation omitted).

In this case, the ALJ's finding that plaintiff only saw Dr. Lively once establishes that the ALJ did not and could not consider Dr. Lively a treating physician. (R. 26). The ALJ also specifically stated that he had considered Dr. Lively's opinion and, for the multiple reasons cited above, gave it little weight. (R. 30). Those findings reflect consideration of the appropriate factors, including the lack of evidence, such as treatment notes, supporting that opinion and the inconsistencies between Dr. Lively's opinions and the opinions of the other physicians. Id. The ALJ also properly found that Dr. Lively's opinion was not entitled to "controlling weight or special significance" because it opined on plaintiff's ability to work, an issue ultimately reserved to the Commissioner. Id. See 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); SSR 96-5p.

For these reasons, the ALJ properly evaluated Dr. Lively's opinion.

4

Plaintiff also argues that the ALJ's findings are inconsistent because the ALJ adopted as severe impairments many of the diagnoses that Dr. Lively found but Dr. Morgan did not. Any error on this point is harmless because the findings of additional impairments are more favorable to plaintiff. See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1163 (10th Cir. 2012).

**Other Medical Opinion Evidence**

Plaintiff contends that the ALJ made two additional errors in assessing the medical opinion evidence. First, plaintiff argues that the ALJ improperly gave great weight to the opinions of Dr. Morgan and the agency physicians. Alternatively, plaintiff argues that the ALJ failed to adopt all of the recommendations of those physicians after giving great weight to their opinions.

Plaintiff cites no authority for the proposition that an examining physician or agency physician's opinion cannot be given great weight, and certainly, there are cases in which it is appropriate to reject a treating physician's opinion (which Dr. Lively was not) and adopt the opinions of other physicians, even if they have not had the benefit of a treating relationship with the plaintiff. See generally 20 C.F.R. §§ 404.1527, 416.927. Because plaintiff raises no specific challenge to the ALJ's treatment of those opinions, additional analysis is not necessary.

If an ALJ gives great weight to a physician's opinion, the ALJ must adopt all of the restrictions in that opinion or explain his reasons for failing to do so. Frantz v. Astrue, 509 F.3d 1299, 1302-03 (10th Cir. 2007)). In Frantz, the Tenth Circuit remanded the ALJ's decision, in part, because the ALJ accepted some, but not all, limitations from a nonexamining physician after giving that physician's opinion great weight. The Tenth Circuit determined that the ALJ erred because an ALJ must "discuss the uncontroverted evidence not relied upon and significantly probative evidence that is rejected." Id. (citing Clifton v. Chater, 79 F.3d 1007,

5

1009-10 (10th Cir. 1996) and referencing <u>Haga v. Astrue</u>, 482 F.3d 1205 (10th Cir. 2007)). Under <u>Clifton</u> and <u>Haga</u>, the ALJ should match his residual functional capacity findings to those opinions that are given great or controlling weight unless the ALJ gives specific, legitimate reasons for rejecting portions of those opinions. In this case, the ALJ did not conduct that analysis.

Plaintiff cites two recommendations that were not included in the residual functional capacity findings: (1) Dr. Morgan's finding that plaintiff's ability to make work decisions was poor; and (2) the agency physician's findings that plaintiff should be limited to superficial contact with supervisors and co-workers and no contact with the public. (Dkt. # 20).

With respect to Dr. Morgan's finding, plaintiff argues that SSR 96-9p controls because it "provides [that] the ability to make work-related judgments is required by [sic] competitive, remunerative, unskilled work." <u>Id.</u> SSR 96-9p governs the process for assessing residual functional capacity when a claimant is capable of performing less than a full range of sedentary work. Plaintiff is not limited to that degree. However, the definition set forth in SSR96-9p is consistent with the definition of the mental capacity required for basic work activities, which include "understanding, carrying out, and remembering simple instructions;" "use of judgment;" "responding appropriately to supervision, co-workers and usual work situations;" and "dealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6).

Dr. Morgan conducted a basic three question test to determine plaintiff's judgment and insight. (R. 308). Plaintiff had good social judgment (in response to the question about what to do with a stamped envelope lying in the street) and fair insight (in response to a question about the meaning of the phrase "don't cry over spilled milk"). (R. 308). Dr. Morgan determined that plaintiff had poor judgment with respect to work decisions because when asked "why is it

important to call in if you are going to be late for work?," plaintiff responded that she would not be late for work. (R. 308).

In that context, Dr. Morgan's finding that plaintiff exhibited poor judgment in her ability to make work decisions does not appear to be the type of finding that would limit plaintiff's ability, as the ALJ concluded, to perform simple, unskilled work. Unskilled work "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). Unskilled work also involves "dealing primarily with objects, rather than with data or people." SSR 85-15. Accordingly, there seems to be no discrepancy between Dr. Morgan's finding and the ALJ's decision to limit plaintiff to simple, unskilled work, and plaintiff cites no case law to support her contention that Dr. Morgan's finding requires a finding of disability or of more severe limitations.

With respect to the agency physician's limitations on superficial contact with co-workers and supervisors and no contact with the public, there is a conflict between the ALJ's decision to give great weight to that opinion and the ALJ's decision to adopt different limitations in his residual functional capacity findings. However, as discussed below in the substantial evidence argument, that conflict is harmless because the other work cited in the ALJ's decision is consistent with limitations on superficial contact with co-workers and supervisors and no contact with the public.

**Substantial Evidence**

Plaintiff argues that four areas of the ALJ's decision are not supported by substantial evidence. Three of those areas – plaintiff's noncompliance with medication, plaintiff's inconsistent reports of hallucinations, and plaintiff's poor credibility as a historian with Dr.

7

Morgan – are clearly supported by the record. The fourth, related to the ALJ's failure to include limits on contact with supervisors, co-workers, and the public, is harmless error.

First, the record supports the ALJ's finding that plaintiff stopped her medication on her own, contrary to plaintiff's argument that she was compliant with her medications despite their ineffectiveness. Plaintiff received a diagnosis of bipolar I disorder and PTSD and began medication management and individual therapy in June 2011. (R. 356). The physician's assistant and psychiatrist noted early on that plaintiff's medication regimen was not effective and began taking steps to modify and simplify plaintiff's medications, but plaintiff also was not compliant. (R. 356-67).

In late September 2011, plaintiff stated that she wanted to start over with her medications, but she was warned that she would require hospitalization to stop all medication without tapering. (R. 364). Plaintiff stated that she could not afford hospitalization, so the psychiatrist began decreasing some of plaintiff's medications. Id. The following week, plaintiff again complained that her medications were "worthless" and asked to stop all medication. (R. 365). Again, the psychiatrist decreased plaintiff's medications and ordered her to stop taking Ambien, "as this is not helpful." Id. At the next appointment, plaintiff reported that she stopped taking all of her medications *except* Zoloft and Ambien. Id. The psychiatrist discontinued plaintiff's previously prescribed medications because plaintiff "has stopped these on her own and refuses to taper off of them as advised." (R. 366). The psychiatrist then prescribed one new medication after plaintiff agreed to take it as prescribed. Id.

Second, the ALJ's decision also clearly outlines plaintiff's inconsistent reports of hallucinations, and the ALJ's findings correspond exactly with the medical records. (R. 28, 391-401). For example, the medical records and the ALJ's findings demonstrate that plaintiff denied

hallucinations in October 2011 and December 2011. (R. 28, 365, 391). In January 2012, however, plaintiff reported hearing music to her counselor and, at a second appointment that month, described auditory and tactile hallucinations to her doctor. (R. 28, 392, 393-94). On two occasions, March 1 and March 29, 2012, plaintiff reported auditory hallucinations to the social worker but denied having hallucinations to her doctor. (R. 28, 396-97, 398-99). Between those two appointments, plaintiff denied experiencing hallucinations. (R. 28, 398). Accordingly, the ALJ's findings that plaintiff inconsistently reported hallucinations is well supported by the record.

Third, the ALJ's finding that plaintiff was not credible in her report to Dr. Morgan is also supported by the record. (R. 28-29, 307). The ALJ noted that Dr. Morgan reported plaintiff "lacked credibility as an historian about her substance abuse history." (R 28-29). In addition, Dr. Morgan found that plaintiff's report of past use was less serious than her legal history indicated (as evidenced by plaintiff's drug conviction). (R. 307). Dr. Morgan also found that plaintiff continued to struggle with the desire to use drugs and that this struggle contributed to her anxiety. (R. 307-09).

Finally, because the ALJ gave great weight to the agency physician's opinion, the ALJ should also have included limits on superficial contact with co-workers and no contact with the public. Instead, the ALJ found that plaintiff could interact routinely with co-workers and supervisors (although he acknowledged that she would have some difficulty doing so) and occasionally with the public. (R. 23). This error is harmless, however, because the other jobs the ALJ identified at step five do not require more than superficial contact with co-workers and supervisors and no contact with the public. See Liveoak v. Astrue, 2013 WL 183710, *14-15 (N.D.Okla. January 17, 2013).

9

The ALJ identified five other jobs that plaintiff could perform:

1) Hand packer –     DOT # 753.687-038

2) Laundry press –   DOT # 363.685-026

3) Sorting –         DOT # 753.587-010

4) Clerical mailer – DOT # 209.587-010

5) Assembly –        DOT # 732.684-062

According to Appendix B of the Dictionary of Occupational Titles ("DOT"), the fifth number of the nine-digit code reflects the job's relationship to people. See http://www.occupationalinfo.org/appendxb_1.html (last visited on February 20, 2014). The DOT rates the amount of interaction on a scale of 0-8, although the scale does not necessarily appear to be in ascending order from most interaction to least. For example, 0 is "Mentoring," and 5 is "Persuading," both of which could involve constant interaction with others. 8, however, is defined as "Taking Instructions-Helping: Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to 'non-learning' helpers." Id. This definition is consistent with superficial contact with supervisors and co-workers.

All of the jobs identified at step five of the ALJ's decision have an 8 for the fifth digit. Additionally, none of the job descriptions require any contact with the general public. For these reasons, any error at step four in failing to include limits on superficial contact with co-workers and no contact with the public is remedied at step five. See Liveoak, 2013 WL 183710 at *14-15 (holding that any discrepancy between the ALJ's residual functional capacity determination that plaintiff have no contact with the general public and the vocational expert's testimony was not reversible error based on the DOT's job codes).

**CONCLUSION**

For these reasons, the ALJ's decision finding plaintiff not disabled is **AFFIRMED**.

SO ORDERED this 6th day of April 2014.

_____
T. Lane Wilson
United States Magistrate Judge